UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| REGINA LYNN WILSEY, | ) | Civil Action No.: 4:21-cv-00816-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| Kilolo Kijakazi,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended,

42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of

Social Security, denying Plaintiff's claim for disability insurance benefits(DIB) and supplemental

security income (SSI). The only issues before the Court are whether the findings of fact are supported

by substantial evidence and whether proper legal standards have been applied. This action is

proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I.  RELEVANT BACKGROUND

### A.     Procedural History

Plaintiff filed an application for DIB and SSI in February 2019, alleging inability to work

since January 1, 2017.[2] (Tr. 15).  Her claims were denied initially and upon reconsideration.

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner of Social Security when this action was filed.

[2] Neither party notes that there is an ALJ decision in the record dated October 10, 2018. (Tr. 81). However, the instant ALJ noted the "final and binding" prior determination and noted there had been no evidence upon which Plaintiff had requested to reopen that decision. (Tr. 16). The ALJ reviewed evidence in 2017 and thus, the court reviews the evidence cited by the ALJ.

Thereafter, Plaintiff filed a request for a hearing. Plaintiff and a vocational expert (VE) testified at a hearing in October 2020. The Administrative Law Judge (ALJ) issued an unfavorable decision on December 3, 2020, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 15-27). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in January 2021, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in this court in March 2021. (ECF No. 1).

**B.      Plaintiff's Background**

Plaintiff was born on December 19, 1968, and was almost fifty-one years old on the alleged onset date. (Tr. 87). Plaintiff had past work of skating rink manager. (Tr. 26). Plaintiff initially alleges disability due to torn tendon in rotator cuff, OCD, nodules in tendons in hands, osteoarthritis in back, nerve damage, and neck problems. (Tr. 87). Later, Plaintiff alleged mental impairments.

**C.      The ALJ's Decision**

In the decision of December 2020, the ALJ made the following findings of fact and conclusions of law (Tr. 15-27):

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2.      The claimant has not engaged in substantial gainful activity since January 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: degenerative disc disease, degenerative joint disease of the left shoulder, and asthma (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except frequently handle and finger; never reach overhead; occasionally climb ramps and stairs and never climb ladders or scaffolds; occasionally balance, stoop, kneel, and crouch; never crawl; tolerate occasional exposure to pulmonary irritants (dust, fumes, odors); and tolerate occasional exposure to extreme cold, extreme heat, and vibration.

6.     The claimant is capable of performing past relevant work as a skating rink manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2017, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in finding mental impairments as non-severe. Plaintiff argues generally that the ALJ did not perform a proper function by function RFC analysis. Plaintiff argues the RFC does not properly account for the severity of Plaintiff's spine problems, with citation to *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). Plaintiff argues the ALJ erred in the subjective symptom evaluation.  Plaintiff argues the ALJ erred in evaluating Dr. DeHoll's opinion. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.     LEGAL FRAMEWORK

#### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

3

be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.  42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims).  An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW;[4] and (5) whether the impairment prevents him from doing SGA.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do.  The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

4

disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

## B.     ANALYSIS

### Mental Impairments as Non-severe

Plaintiff argues the ALJ erred in finding mental impairments as non-severe.

A severe impairment is defined by the regulations as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Plaintiff bears the burden of demonstrating that she has a severe impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). However, "'[a]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on

the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' " *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) (*quoting Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984)).  The severe impairment inquiry "is a de minimis screening device to dispose of groundless claims." *McCrea v. Comm'r*, 370 F.3d 357, 360 (3rd Cir. 2004) (citation omitted). A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the factfinder will progress to step three.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir.2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Plaintiff points to citations of diagnosis of anxiety and a one time diagnosis by a non-treating examiner of bipolar II. (ECF No. 15 at 21). Diagnosis does not equate to functional loss in establishing severity. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Plaintiff argues that the examiner found "considerable difficulty in social settings." (ECF No. 15 at 22). In July 2019, Dr. Cox, Ph.D., performed a one-time mental exam. (Tr. 413). Plaintiff reported she was seeking disability because she hurt every day. (Tr. 413). Plaintiff reported she was the primary caregiver for three grandchildren. (Tr. 413). Plaintiff reported she stopped working when the skating rink she managed closed. (Tr. 414). Plaintiff reported irritability and episodes of depression.  (Tr. 414). Plaintiff reported drug use and incarceration before 2000. (Tr. 414-415). Plaintiff reported regular social interactions with her family and a friend. Plaintiff completed daily activities. (Tr. 415). "During today's interview, the patient presented with normal mood and with laughing at points. She displayed a friendly interactional style." (Tr. 415).  Plaintiff scored 30/30 on the mini mental exam. Plaintiff had normal mood, normal range of affect, normal cognitive speed, and adequate

concentration. (Tr. 415). "The patient does not appear to have any major deficits in social functioning." The remainder of the paragraph is in regard to episodes and "likely" and "might" are used in relation to social effectiveness. (Tr. 416). Plaintiff was capable of completing cognitively focused tasks of a moderate difficulty with pace and accuracy as long as pain and depression levels were not highly elevated. (Tr. 416). The only impressions were "bipolar II, current depressive episode" and "cocaine use disorder, in sustained remission." (Tr. 416).

The ALJ found anxiety and depression did not cause more than a minimal limitation on ability to perform basic mental work activities. (Tr. 18). The ALJ then stated in making the non-severe finding the ALJ analyzed the "paragraph B" criteria. (Tr. 19):

> The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. On the "Function Report-Adult" form, the claimant reported that her illness, injuries, or condition does not affect her memory. She does not need any special reminders to care for her personal needs, but needs reminders to take her medication. She indicated that she could prepare simple meals and do light household chores. She is able to shop and manage her finances. She does not need reminders to go places (Exhibit B3E). The objective evidence also shows the claimant has no significant limitations in understanding, remembering or applying information. Specifically, the psychological examination by Dr. Keith Cox in July 2019 shows the claimant was able to recall her medical history, educational history, employment history, personal history, and medications (Exhibit B10F). Additionally, at the hearing, the claimant was able to recall her work history, dosage of medication, daily activities, and medical treatment. She answered questions appropriately and provided explanations. There is no objective evidence that she is unable to recognize a mistake and correct it, identify and solve problems, sequence multi-step activities, or use reasoning and judgment to make workrelated decisions.
>
> The next functional area is interacting with others. In this area, the claimant has mild limitation. On the "Function Report-Adult" form, the claimant reported that her illness, injuries, or condition affects her ability to get along with others. However, she regularly spends time with family and talks to others on the phone. She also spends most of her day sitting outside and interacting with her grandchildren (Exhibit B3E). Furthermore, the psychological examination by Dr. Keith Cox in July 2019 shows the claimant did not appear to have any major deficits in social functioning. She reported regular social interactions with family and friends. She attends appointments

and shops independently. Dr. Cox observed her to display a friendly interactional style. She was alert, responsive, cooperative, and generally polite. Her eye contact was also appropriate and her speech was spontaneous, coherent, and without articulation difficulties (Exhibit B10F). Furthermore, the undersigned did not observe any speech or communication problems at the hearing. She was well spoken and her speech was clear and fluent.

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. On the "Function Report-Adult" form, the claimant reported that her illness, injuries, or condition affects her concentration and ability to complete tasks. She was "not really sure" how long she could pay attention. However, a review of the record finds no evidence the claimant has been diagnosed or prescribed medication for symptoms related to attention deficit hyperactivity disorder (ADHD). Her hobbies and interests include watching television. The claimant also has a valid driver's license (Exhibit B3E). Psychological examination by Dr. Keith Cox in July 2019 further shows the claimant was alert, with no evidence of hallucinations, delusions, or other disturbed thought. Her thought processes were logical and goal directed. Her cognitive speech was in a normal range. She scored a total of thirty points (maximum thirty), on the Mini-Mental State Examination indicating no gross cognitive impairment. Her intellectual functioning also appeared to be in the normal range (Exhibit B10F).

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant is fifty-one years old and she has reported having no problems caring for her personal needs because of mental problems. She also reported on the "Function Report" that she does have difficulty dressing and bathing, but because of pain, rather than anxiety or depression. She is able to manage her household including cooking and light household chores (Exhibit B3E). A review of the record finds no objective clinical evidence to support the claimant would not be able to regulate her emotions or control her behavior. She also has not undergone any type of mental health treatment or counseling. Psychological examination by Dr. Keith Cox in July 2019 further shows the claimant was dressed and groomed appropriately. Her mood and affect were normal and she laughed at points. She appeared capable of completing self-care tasks with slight accommodations and able to complete cognitively focused daily activities including paying bills (Exhibit B10F).

(Tr. 19-20). The ALJ cited to Plaintiff's own reports, Dr. Cox's exam, and the fact that Plaintiff had

not[5] had any type of mental health treatment or counseling in the relevant period. The ALJ supported

---

[5] *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (inconsistency between a plaintiff's allegations of severity and the treatment sought, or lack thereof, is relevant).

the finding of Plaintiff's mental impairments as non-severe with citation to substantial evidence and the ALJ's analysis and reasoning permitted meaningful review.

**RFC**

Plaintiff argues generally that the ALJ did not perform a proper function by function RFC analysis. Plaintiff argues the RFC does not properly account for the severity of Plaintiff's spine problems, with citation to *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986).

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

In presenting this argument, Plaintiff summarized treatment records and hearing testimony. (ECF No. 15 at 25-29). Plaintiff then immediately focused on the ALJ's statements about Plaintiff not getting a spinal stimulator and cites to *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) and SSR 96-7p[6]. Plaintiff argues the ALJ relies numerous times on Plaintiff not getting a spinal stimulator. (ECF No. 15 at 29; (Tr. 22, 23, 24, 25). In January 2017, its is noted Plaintiff was given an order for a colonoscopy but was unable to meet financial obligations at the time and would now like a new order and a referral to a different pain management because her insurance did not cover the other one. (Tr. 335). In June 2018, Plaintiff was seen by Dr. DeHoll and had BCBS-SC insurance; Plaintiff reported not having the stimulator trial and missing the appointment with Dr. Warrick because "she has a lot of personal/family issues going on at this time and would like to hold off for now." (Tr. 339). In 2019, hospital records show primary insurance of BCBS-SC with Plaintiff as the policy holder. (Tr. 421). In 2020, Plaintiff testified she worried about financial issues. (Tr. 47). Plaintiff's mother paid for Plaintiff's prescriptions and doctors out of pocket because Plaintiff did not have any insurance. (Tr. 47). Plaintiff's mother received social security. (Tr. 47). In a function report, Plaintiff reported her mother paid all her bills. (Tr. 259). Plaintiff testified at the 2020 hearing that she did not have insurance so she could not see anyone. Plaintiff testified she paid $200 a month for pain management and "he can't give me any shot or put the stimulator in that Dr. DeHoll suggested because I don't have any insurance." By May 2020, when Plaintiff was seen by Dr. DeHoll, insurance is no longer noted and Plaintiff is on a sliding fee discount schedule. (Tr. 679).

---

[6] SSR 96-7p was rescinded and replaced by SSR16-3p. SSR 16-3p is in regard to the evaluation of symptoms stated by Plaintiff, and is not the SSR related to RFC determinations. SSR 16-3p, 2017 WL 5180304,*2. Plaintiff presents this argument under the RFC heading; however the guidance for RFCs is in SSR 96-8p. An "RFC assessment is a separate and distinct inquiry from a symptom evaluation." *Dowling v. Comm'r*, 986 F.3d 377, 387 (4th Cir. 2021).

By 2020, Plaintiff's reason for not obtaining the stimulator was no insurance. (Tr. 680). Dr. DeHoll's plan noted because she currently did not have insurance, the stimulator was not an option. (Tr. 681).

Based on the records, it appears Plaintiff had insurance in 2017, 2018, and 2019 but not in 2020. Defendant cites to SSR 82-59, but it was rescinded and replaced with SSR 18-3p. (ECF No. 16 at 8). SSR 18-3p outlines what factors are considered in making a determination of failure to follow prescribed treatment. Within SSR18-3p one of the factors for good cause is: "The individual is unable to afford prescribed treatment, which he or she is willing to follow, but for which affordable or free community resources are unavailable. Some individuals can obtain free or subsidized health insurance plans or healthcare from a clinic or other provider. In these instances, the individual must demonstrate why he or she does not have health insurance that pays for the prescribed treatment or why he or she failed to obtain treatment at the free or subsidized healthcare provider." SSR 18-3p, 2018 WL 4945641, *5 (emphasis added). It appears the stimulator was recommended first when Plaintiff still had insurance.

SSR 16-3p states that the SSA may find allegations regarding symptoms are inconsistent with the overall evidence of record where the frequency or extent of treatment is not comparable with the degree of subjective complaints or if there is a failure to follow prescribed treatment; factors to consider in this analysis are many, one of which is "may not be able to afford treatment and may not have access to free or low cost-medical services." SSR 16-3p. The ALJ did not perform a *Lovejoy* analysis here or discuss the financial aspect of failure to follow treatment; there is record evidence indicating at times Plaintiff might have had insurance to get the stimulator but possibly no additional funds to pay any copays or deductibles. The lack of analysis here by the ALJ is likely error; however, it is not outcome determinative error because while the ALJ did repeat several times that "she again

12

reported not getting the stimulator, which clearly suggests her lower back pain had improved," this was not the sole reason or basis for the RFC and subjective symptom evaluation. (Tr. 22-25).

Finally, Plaintiff argues the evidence summarized was consistent with stand/walk for less than two hours, not sitting for prolonged periods, and changing positions at will, and that these functional capacities were not included in the ALJ's RFC determination. (ECF No. 15 at 30).

The ALJ here considered Plaintiff's testimony that she has to use a walker and that she falls. (Tr. 21). Plaintiff testified that she can stand for 20 minutes. (Tr. 22). The ALJ found that medical evidence was consistent with the RFC and inconsistent with the disabling level of pain alleged by Plaintiff. (Tr. 22). Before the alleged onset date, Plaintiff had three surgeries, physical therapy, and epidural injections. In 2017, imaging showed decreased signal in the T11/12 disc space but no herniation or stenosis; the ALJ cited to Exhibits B1F and B4F. (Tr. 22). The ALJ reviewed orthopedic surgeon Dr. DeHoll's treatment records which showed treatment with only oral medication. The ALJ reviewed exams of abnormal and normal findings, citing tenderness, abnormal gait, 5/5 strength, and negative straight leg raising test. (Tr. 22). The ALJ noted Plaintiff was not to return to Dr. DeHoll on a regularly scheduled basis. Plaintiff returned to Dr. DeHoll in 2019; Plaintiff had been seen at other offices for different ailments and did not complain of lower back pain. (Tr. 22). The ALJ notes Plaintiff had normal exams at those visits, citing Exhibits B7F and B15F. (Tr. 22). Plaintiff saw Dr. DeHoll again in 2020; Plaintiff had tenderness, pain with range of motion, and had normal gait. Plaintiff was referred to physical therapy; the ALJ cited to Exhibit B19F. (Tr. 23). The ALJ noted Plaintiff began seeing a pain management clinic for medication in 2020 and she rated her pain as a two and three on several visits. Plaintiff examined with tenderness, pain, negative straight leg raising test, and normal strength. Plaintiff's pain improved. (Tr. 23). The

13

ALJ cited to Exhibit B20F. The ALJ stated the RFC was a reduced range of light work due to her spine and asthma impairment. (Tr. 24). "These limitations are clearly supported by the record that shows her pain and asthma symptoms are stable and well controlled with medication." (Tr. 24). The ALJ then weighed opinions and concluded that the evidence did suggest Plaintiff was limited but not more restricted than the RFC. (Tr. 26).

Based on the foregoing, the ALJ properly considered the record and cited to substantial evidence to support the RFC found. Where there are two reasonable views of the evidence, the responsibility falls on the ALJ and it is not the court's duty to decide between them. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The court cannot say that a reasonable mind would not reach this RFC in view of the totality of the evidence.[7]

As already discussed in the issues above, in formulating the RFC, the ALJ considered Plaintiff's allegations, subjective reports, objective evidence, and opinions. (Tr. 21-26). The ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Based upon the foregoing, substantial evidence supports the ALJ's RFC.

As to Plaintiff's arguments regarding a proper function by function analysis, the ALJ's RFC and RFC narrative is supported by substantial evidence as displayed above. (ECF No. 15 at 21). The

---

[7] While the ALJ did analyze Plaintiff's failure to receive the recommended stimulator without reference to *Lovejoy* considerations, the ALJ made RFC, opinion, and SSE findings supported by citations to substantial evidence as to Plaintiff in her condition as presented without any additional medical care. This included discussion of Plaintiff's exams, treatments, and Plaintiff's own reports.

RFC discussion by the ALJ permitted meaningful review.[8]

**Subjective Symptom Evaluation**

Plaintiff argues the ALJ erred in performing subjective symptom evaluation.

SSR 16-3p is applicable to cases decided after its effective date, such as this case. *See Morton v. Berryhill*, No. 8:16-cv-0232-MBS, 2017 WL 1044847, *3 (D.S.C. Mar. 20, 2017). Although SSR16-3p eliminates usage of the term "credibility" because the regulations do not use the term, the assessment and evaluation of Plaintiff's symptoms requires usage of most of the same factors considered under SSR 96-7p.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir.

---

[8] Remand may be appropriate when there is no function by function analysis, but remand is only appropriate when meaningful review is frustrated and the court is "unable to fathom the rationale in relation to evidence in the record." *See Mascio*, 780 F.3d at 636 (*citing Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Such is not the case here on either account. *See e.g. Ladda v. Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. Oct. 18, 2018)and *Wilbanks v. Berryhill*, No. CV 1:17-1069-JMC-SVH, 2018 WL 4941121, at *10 (D.S.C. Feb. 7, 2018), *report and recommendation adopted sub nom.*, 2018 WL 4476118 (D.S.C. Sept. 19, 2018).

1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce her capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR

16

16-3p, at *11.

As discussed above, the ALJ reviewed Plaintiff's testimony, reports, medical records, and doctor's opinions and found Plaintiff's statements concerning the intensity, persistence and limiting effects of her alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision. (Tr. 21). Plaintiff again focuses on the ALJ's statements about Plaintiff's failure to get a stimulator. (ECF No. 15 at 32). This issue is already discussed above. Plaintiff argues Plaintiff's continued complaints of significant back pain "belies the ALJ's claim that Plaintiff's condition had improved." (ECF No. 15 at 32). As summarized above, the ALJ reviewed records of abnormal and normal exam findings and noted Plaintiff reported a number of pain level improvements in rating pain at only 2 or 3. (Tr. 23).

A claimant's allegations alone can never establish that she is disabled. 20 C.F.R. § 404.1529. An ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record. 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). Plaintiff is not required to be without symptoms to be found not disabled by the ALJ. Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision.  The ALJ sufficiently explained how Plaintiff's subjective allegations were not entirely consistent with the evidence. Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were not entirely consistent with the record.

## Opinions: Dr. DeHoll

Plaintiff argues the ALJ erred in evaluating Dr. DeHoll's opinion.

17

For applications filed on or after March 27, 2017, such as this action, the regulatory framework for considering and articulating the value of medical opinions has been changed. *See* 20 C.F.R. § 404.1520c, § 416.920c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017). Importantly, the new regulations no longer require any special significance be given to opinions by a treating physician. *See* 20 C.F.R. § 404.1527 (noting that the treating physician rule only applies to claims filed before March 27, 2017),§ 416.920c. The ALJ is not required to defer to or give any specific weight to medical opinions. 20 C.F.R. § 404.1520c(a)§ 416.920c(a). Instead, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of: (1) supportability; (2) consistency; (3) relationship with the claimant(length, frequency, purpose, extent, and examining); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b), (c); § 416.920c(b),(c). Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. § 404.1520c(a), (b)(2), § 416.920c(a), (b)(2). An ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. § 404.1520c(b)(2), § 416.920c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1), § 416.920c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R.

18

§ 404.1520c(c)(2), § 416.920c(c)(2).

There are two opinions analyzed by the ALJ as to Dr. DeHoll. (Tr. 24-25). First, Exhibit B4F/6 is a treatment note from February 2018. Insurance is noted as BCBS of SC. (Tr. 341). Plaintiff reported muscle aches, muscle weakness, back pain, numbness, and tingling. (Tr. 342). Upon exam, Plaintiff had diminished pulses, spine tenderness, painful flexion and extension, 5/5 strength, abnormal tandem gait, negative straight leg raising test, normal gait, and pain with motion. (Tr. 343). Plan was: "We have discussed her investigating a spinal cord stimulator, which I have encouraged her to consider. Regarding her ability to work, I think any kind of physical labor or prolonged standing is likely out of the question, and therefore her probability of becoming fully gainfully employed is low, and I would be in favor of her pursuit of disability rating." (Tr. 343).  As to this opinion, the ALJ found:

> The records of Dr. DeHoll on February 26, 2018 indicates he opined the claimant's probability of becoming fully gainfully employed is low and he would be in favor of her pursuit of disability (Exhibit B4F/6). The undersigned finds this statement is inherently neither valuable nor persuasive, as the records of Dr. DeHoll clearly show the claimant failed to adhere to getting a spinal cord stimulator. His records further consistently show she had tenderness of the lumbar spine and an abnormal gait, but her motor strengths were normal at 5/5, straight leg raising tests in the supine and seated positions were negative, and she had intact sensation (Exhibits B4F, B8F).

(Tr. 24-25). The ALJ relied on more than Plaintiff's failure to get a stimulator and also cited to exams of both normal and abnormal findings. Further, the language "inherently neither valuable nor persuasive" used by the ALJ is from 20 C.F.R. § 404.1520b(c) and states that there is no requirement to provide analysis of evidence that is inherently neither valuable nor persuasive. A statement on issues reserved for the commissioner is evidence that is inherently neither valuable nor persuasive. 20 C.F.R. § 404.1520b(c)(3). Substantial evidence supports the ALJ's finding as to Dr. DeHoll's

February 2018 statement.

In May 2020, Dr. DeHoll completed a form. (Tr. 664-666). Plaintiff could stand/walk less than two hours and sit about three hours total in a work day. Plaintiff had to change positions every 10-20 minutes. (Tr. 664). Plaintiff needed the ability to shift positions at will. (Tr. 665). Plaintiff needed to lie down at unpredictable intervals three times a week. The medical findings to support the above limitations was simply "spine fusion." (Tr. 665). Plaintiff could occasionally perform all posturals, except never climb ladders. The finding supporting these limits was "pain." (Tr. 665). Plaintiff was to avoid even moderate exposure to hazards due to "pain." (Tr. 666). Plaintiff would be absent at least three times a month. (Tr. 666). The ALJ found:

> The undersigned finds this assessment is not persuasive for multiple reasons. First, clinical findings on examination by Dr. DeHoll on the same day the form was completed are inconsistent with his assessment. This includes the claimant having a normal gait, no limp, and using no assistive device. She had tenderness and pain with range of motion but she was neurologically intact and with normal motor strength, normal reflexes, negative straight-leg raising tests, and intact sensation (Exhibit B19F). As discussed above, since the alleged onset date, the claimant's pain has been treated conservatively and she has failed to undergo spinal cord stimulator placement. Additionally, as of the date this form was completed, the claimant had not been seen at that clinic in almost one year. When she was last been seen on July 1, 2019, she was seen by Douglas Dow, PA, rather than by Dr. DeHoll.

(Tr. 25). Again, the ALJ cited to multiple reasons not just the failure to get the stimulator. Before finding this opinion unpersuasive, the ALJ had reviewed Dr. DeHoll's treatment notes and Plaintiff's other records. (Tr. 21-25). The ALJ reviewed both abnormal and normal exam findings. The ALJ referred to conservative treatment discussed in earlier parts of the decision, which included treatment records, reports of Plaintiff working in the yard, pain ratings of two and three with medication regimen, and caring for her grandchildren. (Tr. 19-25).

The ALJ supported his finding of unpersuasive by reviewing the consistency and

20

supportability factors of 20 C.F.R. § 404.1520c(b), (c); § 416.920c(b),(c), citing to Plaintiff's symptoms and findings in treatment notes. Under the deferential standard of review applicable here, substantial evidence is not a high threshold. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The ALJ here performed the analysis under the applicable regulatory scheme and considered the factors most important to determining the persuasiveness of Dr. DeHoll's opinions. The ALJ cited to the record to support this finding and followed the applicable regulatory law.

### III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

s/ Thomas E. Rogers, III

August 31, 2022                                 Thomas E. Rogers, III
Florence, South Carolina                        United States Magistrate Judge